```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MISSOURI
                          EASTERN DIVISION
```

| | |
|---|---|
| GREATER ST. LOUIS CONSTRUCT.  ) | |
| LABORERS WELFARE FUND, et al.,  ) | |
|                               ) | |
|     Plaintiffs,               ) | |
|                               ) | |
|   v.                          ) | Case No. 4:20 CV 1250 RWS |
|                               ) | |
| B.F.W. CONTRACTING, LLC, et al.,  ) | |
|                               ) | |
|     Defendants.             ) | |

## **MEMORANDUM AND ORDER**

This matter is before the Court on cross-motions for summary judgment. Plaintiffs are four employee benefit funds as defined in ERISA,[1] their respective Boards of Trustees, and two unions which are labor organizations as defined in the National Labor Relations Act.  On July 21, 2015, defendants B.F.W. Contracting, LLC and B.F.W. Contractors, LLC,[2] a contracting firm, signed a collective bargaining agreement (CBA) between the Unions and the Associated General Contractors (AGC) of St. Louis.  By signing the CBA, defendant "agree[d] to bound by all subsequent agreements, renewals, changes or extensions thereto made by the original parties, unless notice of termination is given to the Union by the

---

[1]The Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1002(1), *et seq.*

[2] Although the complaint names both entities as defendants, the parties refer to them as one defendant.  Therefore, for ease of reference, the Court refers to these two named parties as "defendant."

undersigned not less than sixty (60) days nor more than ninety (90) days prior to any termination date." The term of the CBA was from March 1, 2014 through March 1, 2019. The Unions and the AGC renewed the CBA by signing a successor agreement effective from March 1, 2019 through March 1, 2024.

Defendant did not terminate the CBA as required by its terms and as a result became bound by the successor agreement. The CBA imposes reporting duties and payment obligations upon defendant and provides for liquidated damages, interest, and attorney's fees in the event defendant fails in its obligations. In this lawsuit, plaintiffs allege that defendant has failed to meet its obligations under the CBA for the period of January 1, 2017 through June 30, 2020. Although defendant makes several arguments about why it should not be held liable in this case, the undisputed material facts demonstrate that defendant owes the contributions and other requested amounts sought by plaintiffs in this case. For the foregoing reasons, plaintiffs are entitled to judgment as a matter of law but defendant is not.

## **Standards Governing Summary Judgment**

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

2

"Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *Nat'l Bank of Comm. v. Dow Chem. Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *Nat'l Bank*, 165 F.3d at 607 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (citing *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## Undisputed Facts

Plaintiffs comprise the following: four employee benefit plans[3] within the meaning of Sections 3(1), (3), 502 and 515 of ERISA; the Boards of Trustees of

---

[3] The Greater St. Louis Construction Laborers Welfare Fund (Welfare Fund); the Construction Laborers Pension Trust of Greater St. Louis (Pension Trust); the St. Louis Vacation Fund (Vacation Fund); and, the Construction Laborers & Contractors Training Fund of Eastern Missouri (Training Fund).

these Funds, which are the Plan Sponsors and Administrators of the Funds; and, Local Unions Nos. 42 and 110, Laborers International Union of North America, AFL-CIO (Unions), which are labor organizations as defined in the National Labor Relations Act.

The CBA between the Unions and the AGC appears in the record as Document Number 45-3.  It has the effective dates of March 1, 2014 through March 1, 2019.  Defendant became a signatory to the CBA on July 21, 2015 through defendant's President/Owner Frank Wilson.  This agreement appears in the record as Document 45-2.  There is no dispute that this agreement is genuine or that Wilson is the President/Owner of defendant and had the authority to enter into this agreement.[4]  The agreement states that defendant "agrees to and is bound by the 2014-2019 [CBA] **and also agrees to be bound by all subsequent agreements, renewals, changes or extensions thereto made by the original parties, unless notice of termination is given to the Union by the undersigned not less than sixty (60) days nor more than ninety (90) days prior to any termination date.**" ECF 45-2 (emphasis supplied).

The Unions and the AGC subsequently agreed to a successor CBA effective from March 1, 2019 through February 29, 2024.  That CBA appears in the record

---

[4] Wilson admits these facts in his affidavit in support of defendant's motion for summary judgment.  ECF 53-2.

4

as Document 45-4.  There is no dispute that defendant did not give notice of termination of its signatory to the CBA between 60 and 90 days prior to the March 1, 2019 termination date of the 2014-2019 CBA.  Therefore, under the plain language of the agreement signed by defendant, defendant also became bound by the terms of the successor CBA.

    Defendant attempted to terminate its CBA by letter to one of the Unions (Local 42), with a copy to the Benefit Funds, dated November 8, 2019.  That letter appears in the record as Document 45-5.  There is no dispute that this letter was not sent between 60 and 90 days prior to the expiration date of the 2014-2019 CBA and therefore was not an effective termination under the plain language of the agreement signed by defendant.  During this litigation, defendant produced a May 21, 2019 letter that it claims to have sent to the Union in an attempt to terminate its CBA.  That letter appears in the record as Document 45-6.  Even if the Court assumes for purposes of this motion that the letter was sent, that letter was also sent outside the "not less than sixty (60) days nor more than ninety (90) days prior to" the expiration date of the 2014-2019 CBA and therefore was not an effective termination of the agreement, either.[5]

---

[5] To the extent defendant argues that this letter was timely because it was sent within 60 days of the four year window of when defendant became bound by the CBA (i.e., July 21, 2015), this argument is insufficient as a matter of law to preclude summary judgment in favor of plaintiffs because there is no dispute that the 60/90 day window contained in defendant's agreement refers only to the termination date of the CBA between the Unions and the AGC, which is March 1,

5

Article V, Sections 5.03 through 5.10 of the CBA[6] requires the submission of monthly reporting forms and payments to the Welfare, Pension, Vacation, Training, Site Advancement, Supplemental Dues, and LECET Funds in amounts specified in the agreement.  Defendant reported to the Benefit Funds that it had "no laborers" working during the months of February through June of 2019, and it took inactive status in July of 2019.[7]  Under the CBA, an employer who requests inactive status will be allowed to cease reporting monthly that it employs "no laborers" but the employer remains signatory and obligated to recommence reporting should it again employ laborers.

The CBA also provides that plaintiffs shall have the right to perform a financial examination of defendant's books and records periodically to ensure that payments have been properly made in accordance with the terms of the CBA. Defendant was first audited for the period of July 1, 2015 through December 31, 2016.[8]  ECF 45-8.  In early 2020, three years after the first audit, defendant was

---

2019.  There is no termination date of July 21, 2019.  The language of the agreement signed by defendant is unambiguous and must be enforced as written.

[6] For ease of reference, the Court refers to CBA in the singular, although plaintiffs actually seek to enforce the obligations under the 2014-2019 CBA and the 2019-2025 CBA.  Defendant's obligations at issue in this case are the same under both CBAs.

[7] Wilson avers that his home burned down during this time and that he lost business records. ECF 53-2.

[8] That audit revealed underreporting, and plaintiffs filed suit to recover those amounts in *Greater St. Louis Laborers' Welfare Fund, et al. v. BFW Contracting, LLC,* Case No. 4:18 CV 159 SNLJ.

audited again for the period of January 1, 2017 through March 31, 2020. Defendant refused to provide any financial documents to plaintiff's auditor for any period after July 2019, claiming that its CBA with the Unions had terminated as of that date. Plaintiffs then filed the instant lawsuit, seeking to compel an audit and to recover unpaid contributions, supplemental dues, liquidated damages, interest, fees, and costs.

In June of 2021, this Court ordered defendant to produce documents so that plaintiffs could determine the amounts potentially owed by defendant under the CBA. ECF 31. Plaintiffs' auditor then performed a financial examination through February 2020[9] and reported that defendant had failed to report and pay fringe benefit contributions and supplemental union dues on 1,210.61 hours, which amounts to $30,368.22: $21,556.14 in fringe benefit contributions; $1,667.25 in supplemental dues; $4,643.97 in liquidated damages; and, $2,510.86 in interest[10] calculated through September 30, 2021. ECF 45-9, 45-10, and 45-11. The Benefit Funds were charged $4,792 for the audit.[11]  These amounts remain due and owing.

---

[9] Despite seeking contributions for the period ending June 30, 2020, plaintiffs were only able to obtain audit information from defendant through February of 2020.

[10] Interest was calculated based on the IRS underpayment rate, which is the total of the federal short-term rate plus 3%, as required by 29 U.S.C. § 1132(g)(2).

[11] The auditor avers that the fees were higher than usual because of difficulties obtaining information from defendant during the audit process. ECF 45-10.

The CBA requires defendant to pay plaintiffs' costs, attorneys' fees, and audit costs if, as here, suit is filed to recover unpaid contributions. Section 5.10 of the CBA also imposes liquidated damages of twenty percent (20%) on all amounts owed to plaintiffs that are not paid by the last day of the month following the month in which the hours were worked. Plaintiffs have incurred $11,015.00 in legal fees and $2,393.54 in court costs in this case. ECF 45-12.

The total amount plaintiffs request in this case is $48,568.76. Plaintiffs' complaint also prays for an order "requiring defendant to make payments in the future to the plaintiffs in accordance with the terms and provisions of the collective bargaining agreement, and such collective bargaining agreements as may be negotiated and executed in the future." ECF 1.

## **Discussion**

The undisputed facts as set forth above demonstrate that plaintiffs are entitled to judgment as a matter of law in the amount requested. In an attempt to evade plaintiffs' right to summary judgment, defendant argues that it is entitled to judgment in its favor for several reasons. As discussed below, defendant's arguments are meritless and do not entitle it to summary judgment or preclude the Court from entering judgment as a matter of law in favor of plaintiffs.

Defendant reraises its argument, previously rejected by the Court in June of 2021, that the Court lacks subject matter jurisdiction over this case. It does not.

8

ERISA vests this Court with exclusive jurisdiction over claims such as this, namely claims brought by ERISA-covered employee benefit funds and labor organizations against employers for unpaid contributions.  29 U.S.C. § 1132(e).  Defendant's argument that it is no longer subject to the CBA after July of 2019 does not divest this Court of subject-matter jurisdiction over plaintiffs' ERISA claim.  Moreover, for the reasons previously stated, defendant remains subject to the CBA as it did not terminate its signatory status to the CBA through either the November 8, 2019 or the May 21, 2019 letters.  This Court has subject-matter jurisdiction to decide this ERISA dispute.

Defendant's argument that plaintiffs failed to exhaust their administrative remedies under the National Labor Relations Act (NLRA) is misplaced because, as stated above, this action for unpaid contributions is governed exclusively by the provisions of ERISA and does not implicate the NLRA, which governs the relationship between labor organizations, employers, and individual employees.

Similarly, defendant's argument about whether the CBA is actually a § 8(f) pre-hire agreement and not a § 9(a) agreement is immaterial to a resolution of the issues before the Court.  Defendant argues that the CBA is a § 8(f) agreement and that it was therefore permitted to terminate the CBA at any time without regard to the automatic renewal provision contained in the agreement.  The Eighth Circuit Court of Appeals has expressly rejected defendant's argument: "§ 8(f) agreements

are binding, enforceable., and not subject to unilateral repudiation." *N.L.R.B. v. Seedorff Masonry, Inc.*, 812 F.3d 1158, 1162 (8th Cir. 2016). "[A]n automatic renewal provision in a § 8(f) contract extends the no-unilateral-repudiation rule." *Id.* Therefore, whether or not the CBA is construed as a § 8(f) agreement, defendant was signatory to the 2014-2019 CBA, did not terminate its signatory status according to the agreement, and thus remains bound by the successor CBA.[12]

Finally, defendant points to the "one-employee" unit exception to the "no-unilateral repudiation" rule in the § 8(f) context as a reason why it should not be held liable for unpaid contributions and other amounts due in this case. According to defendant, it has either one laborer employee, no employees, or non-laborer employees and should therefore be able to repudiate the 2019-2014 CBA under this exception. While an employer will not violate the NLRA for "disavowing a bargaining agreement and refusing to bargain" if the bargaining unit consists of no more than one single permanent employee at all material times, *see Seedorff*, 812 F.3d at 1162, here the undisputed evidence from the audit shows that defendant had two to three employees performing covered work during the period at issue in

---

[12] Defendant's status as a member (or non-member) of the AGC is likewise irrelevant to this dispute, as defendant's obligation under the CBA is based on its own execution of the CBA agreement in 2015 by Wilson and not as a member of the AGC.


this case.[13]  Therefore, while defendant may have a current right to repudiate the 2019-2024 CBA – an issue on which plaintiffs have no position and one which the Court need not and therefore does not decide – the undisputed evidence demonstrates that plaintiffs are entitled to recover the requested amounts for the period requested under the plain language of the CBA.[14]

To the extent defendant attacks various items included on the audit, the Court concludes that this does not create a genuine dispute precluding summary judgment because defendant offers no evidence demonstrating that the calculations are not correct.  As for the request for fees and costs, the Court determines that plaintiffs are entitled to recover reasonable attorneys' fees and costs under the CBA and ERISA, *see* 29 U.S.C. § 1132(g)(2)(D).  As demonstrated by the affidavits of counsel, plaintiffs' request for attorneys' fees is adequately supported, and the number of hours expended as well as the charged rate were reasonable given the procedural posture of the case, defendant's refusal to produce documents

---

[13] As previously stated, the complaint requests unpaid amounts for the period of January 1, 2017 through June 30, 2020, but plaintiffs were only able to obtain information through February 2020.

[14] However, given defendant's arguments regarding its current number of employees, the Court will deny plaintiff's request for "an order requiring defendant to make payments in the future to the plaintiffs in accordance with the terms and provisions of the collective bargaining agreement." ECF 1.  Instead, plaintiffs should follow the normal procedures for enforcing the CBA to the extent it becomes necessary in the future, which could include filing a new complaint for unpaid contributions.  In such a case, the parties should not seek to reopen this matter or request direct assignment to the undersigned based on an argument that any future case for unpaid contributions is related to the instant action.

(resulting in the filing of a motion to compel), and the number and nature of the defenses raised by defendant. ECF 45-12, 64-1.[15] Plaintiffs have incurred $11,015.00 in legal fees and $2,393.54 in costs in this case and are entitled to recovery of the amount requested.

Finally, defendant's motion for leave to file an amended response to the complaint will be denied as moot, given that the Court has already considered and rejected all of these proffered arguments on summary judgment on the merits.[16]

Accordingly,

**IT IS HEREBY ORDERED** that plaintiffs' motion for summary judgment [43] is granted as follows: plaintiffs shall have summary judgment against defendant on plaintiffs' complaint as set out in this Memorandum and Order and the Judgment entered herewith.

**IT IS FURTHER ORDERED** that defendants' motion for summary judgment [50] is denied.

---

[15] Counsel's rate of $210 per hour in 2020 and $215 in 2021 is reasonable and customary, and 51.5 hours of attorney time expended on the case is reasonable given the litigation history of this case through the summary judgment stage. Likewise, the paralegal rate of $120 per hour in 2020 and $125 in 2021 is reasonable and customary, and one hour of paralegal time expended on this case is reasonable. The Court notes that these were the hours and rates actually charged to, and paid by, plaintiffs, *see* ECF 64-1, as counsel does not have a contingency fee arrangement with plaintiffs, further evidencing the reasonableness of the fee.

[16] Plaintiffs did not argue that defendant had waived any of its arguments for failure to raise them in the manner set out in defendant's amended response.

**IT IS FURTHER ORDERED** that defendants' motion for leave to file amended response to complaint [58] is denied as moot.

A Judgment in accordance with this Memorandum and Order is entered this same date.

                                                    RODNEY W. SIPPEL
                                                    UNITED STATES DISTRICT JUDGE

Dated this 21st day of March, 2022.